Lisa JOHNSON & Mark Johnson and
Norma Archer & Willard Archer,
Appellants,

v.

James B. STUENZI, A/K/A James Stuenz.

Superior Court of Pennsylvania.

Argued Jan. 14, 1997.

Filed July 2, 1997.

Brian C. York, Jamestown, NY, for appellants.

Christopher J. Kovski, Erie, for appellee.

Before FORD ELLIOTT, SCHILLER and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order granting appellee's motion for summary judgment on the basis of the statute of limitations. Appellants raise two general issues, whether the court erred in finding as a matter of law that appellants' cause of action was barred by the statute of limitations; and, did the court err in concluding that there were no issues of material fact to be decided at trial. We vacate and remand.

Appellants allege they sustained injuries when a vehicle driven by the appellee collided with the rear of a vehicle occupied by appellants on Route 6 in Erie County on February 2, 1991. Appellee was driving a truck owned by his father, Ben Stuenzi, and registered in the state of Illinois. At the time of the accident appellee resided at a Christian camp called Miracle Mountain Ranch in Spring Creek, Pennsylvania, where he worked as a counselor or youth minister. Appellee left the Miracle Mountain Ranch in September of 1991 but remained within the Commonwealth until approximately January 10, 1992. Appellee moved about for the next three years in his capacity as a Christian camp counselor/minister working at a variety of camps across the country. In all, appellee changed his residence six times from the time of the accident and has not resided in the Commonwealth since January of 1992.

Appellants received a notice of accident report from the Pennsylvania State Police which listed appellee's address as a post office box in Spring Creek, as well as an address for appellee's father at a street number in Woodstock, New York. Somewhat inconsistently, however, appellee's license number was indicated as an Illinois number, as was the vehicle's registration number. Further, the zip code indicated for the Woodstock address did not correspond to Woodstock, New York, but did correspond to the zip code for Woodstock, Illinois. The official accident report, which was received later, indicated that the owner of the vehicle was Ben Stuenzi at a Woodstock, Illinois address, and provided a telephone number. The report also listed an address and telephone number for appellant.

On or about March 12, 1992, appellants, Lisa and Mark Johnson, who lived in Chautauqua County, New York, and appellants Norma and Willard Archer, who lived in Warren County, Pennsylvania, retained counsel from Jamestown, New York, to file a suit for injuries resulting from the accident. Having reviewed the notice of accident report and seeing that the owner of the vehicle had a Woodstock, New York, address counsel believed that, in addition to an action against appellee in Pennsylvania, there would be a New York cause of action against Ben Stuenzi. In an effort to file suit prior to Pennsylvania's two year statute running counsel,

through his secretary and paralegals, made several phone calls to the number for appellee provided in the accident report without even getting someone to answer the phone. When an answer was finally received they were informed that they had reached a dormitory at the Miracle Mountain camp and that although they recognized appellee's name, he had left quite some time ago. No other information about appellee was provided appellants. Appellants' counsel, or his staff, also made some calls to the number listed for Ben Stuenzi but also received no answer. Additionally, they checked the phone directory for Spring Creek and attempted to contact an Alliance Church in an effort to track down appellee. None of these efforts resulted in a current address for appellee. Consequently, as of February 2, 1993, no suit had been filed.

After the two year period expired appellants' counsel, still under the impression the owner of the vehicle was a New York resident, began concentrating on filing an action in New York prior to the three year limitations period expiring. Counsel again called the number for appellee in Spring Creek and reached someone in the dormitory who gave them the number for the camp office. Upon reaching the camp office they were told that appellee had worked there at one time but had moved to one or more places since. They further commented that they believed appellee may be back home in Illinois. At this time counsel realized that appellee's father lived in Woodstock, Illinois and not Woodstock, New York. Counsel contacted the sheriff's office of the county in which Woodstock, Illinois was located and forwarded a complaint filed in New York state naming both appellee and his father as defendants. Although appellee's father had moved from the address given to the sheriff, he was able to locate the new address. When the sheriff arrived at appellee's father's residence the father was not there but appellee was. Counsel received the return of service in early April of 1994, which indicated appellee had been served at the Woodstock, Illinois location. Upon preliminary objection it was later determined that a New York action could not be maintained for lack of personal jurisdiction over appellee in New York. Con-

sequently, appellee was finally served with the complaint in question, which was filed on March 2, 1995, by certified mail in early March, 1995.

After discovery was closed appellee filed a motion for summary judgment based upon the statute of limitations. Briefs were received and an argument was scheduled at which appellants' New York counsel, in unsworn testimony, detailed some of the efforts that were made to locate appellee. The court considered the affidavits and testimony of appellants' counsel and then granted appellee's motion. The present appeal followed.

The statute of limitations question revolves around the provisions regarding absentee defendants. 42 Pa.C.S.A. § 5532(a), in relevant part, provides: "[i]f, after a cause of action has accrued against a person, he departs from this Commonwealth and remains continuously absent therefrom for four months or more, ... the time of his absence ... is not part of the time within which the action or proceeding must be commenced." Pursuant to this provision, if an alleged tortfeasor leaves the Commonwealth after the commission of the tort the period spent outside the Commonwealth is excluded from the limitations period. However, under subsection (b)(3), the time is not excluded "[w]hile jurisdiction over the person of the defendant can be obtained without personal delivery of process to him within this Commonwealth." Since, under the Pennsylvania Long–Arm Statute, jurisdiction over a non-resident defendant can be obtained through service by certified mail it is contended that any period of time which a plaintiff knows of, or should have known of, the non-resident defendant's mailing address should not be excluded from the limitations period. In light of the above provision it seems clear that the time during which appellants actually knew of appellee's whereabouts cannot be excluded, since service of process could have been easily effected. However, dealing with the interim period is more difficult and further complicated by the virtual nonexistence of case law dealing with this particular issue.

Generally speaking, a litigant has an obligation to serve a defendant within the statutorily prescribed period. Further, it is entirely foreseeable that potential defendants may move after a cause of action accrues but before a plaintiff endeavors to serve them. Thus, it is reasonable to impose a duty upon a litigant to locate and serve a defendant within the period of limitations. However, it is just as foreseeable that there will be times when a defendant will be very difficult to locate after a cause of action has accrued due to the defendant's moving from the Commonwealth and there being a lack of available information for finding his present location. Although it is reasonable to impose a duty upon a plaintiff to diligently attempt to locate a defendant, it would be unfair to punish a plaintiff who has failed to locate a defendant despite the exercise of due diligence by extinguishing his right to sue. Commonsense and general fairness suggests that the period of time that a defendant is outside the Commonwealth and has escaped location, or is not locatable, despite the exercise of due diligence should be excluded from the limitations period. This is essentially the conclusion reached by the Federal District Court for the Eastern District of Pennsylvania in *Bywaters v. Bywaters*, 721 F.Supp. 84 (E.D.Pa.1989), which also is the only decision found which attempts to deal with this particular problem.

In *Bywaters* the court considered a case where a daughter sued her father for assault, battery, invasion of privacy and breach of parental care based upon her father's continuous sexual abuse of her as a minor. The plaintiff did not file suit against her father until six years and forty-eight days after the father had left the family residence, which represented the last possible date which the abuse could have occurred. Because the statute of limitations was at issue the court fashioned two interrogatories to the jury regarding that issue. The interrogatories were designed to allow the court to determine the limitations issue post-trial if necessary. The first inquiry asked the jury to find by a preponderance of the evidence whether the plaintiff knew her father's address after he had left the family residence and moved to New Jersey. The second asked the jury to

find by a preponderance of the evidence whether, upon the exercise of reasonably diligent inquiry, the plaintiff should have known of her father's address. The jury returned a response of yes to both questions while returning a verdict for the plaintiff. The defendant filed a motion for judgment notwithstanding the verdict (JNOV).

The court considered the statutory tolling provisions and the premise that the statute of limitations is an affirmative defense in trying to develop a workable rule applying the tolling provision. The court then held that when the statute of limitations is raised and the plaintiff contends that the defendant has been outside the jurisdiction the plaintiff bears the burden of demonstrating by a preponderance of the evidence that the defendant has been absent within the meaning of 42 Pa.C.S.A. § 5532(a). The burden then shifts to the defendant to show that the plaintiff could have located the defendant's whereabouts through reasonable diligence and served him there by certified mail. The court then concluded that it had failed to ask the jury a pivotal question, that being at what point should the plaintiff have discovered defendant's whereabouts. The court commented that the appropriate remedy would be to grant a new trial. However, the court did not have a motion for new trial before it. Further, the evidence did not establish with certainty that plaintiff either knew or should have known of her father's whereabouts in May of 1981. Consequently, the defendant's motion for JNOV was denied.

Although decisions of the federal courts applying Pennsylvania law are not binding upon us, both sides of the present controversy have argued, if not fully embraced, the approach employed in *Bywaters*. We believe the *Bywaters* decision does a good job of dealing with a problematic situation, however, we are not completely comfortable with the arguments advanced in the present case which purport to follow the *Bywaters* rule. The focus of these arguments, of course, falls upon the issue of reasonable diligence in finding the defendant, as it should. Yet, perhaps spawned by the *Bywaters* court's usage of the phrase "*could have located* the defendant's whereabouts through reasonable

diligence ..." appellee barraged the court with a litany of facts and details suggesting it would have been child's play to find appellee had appellants simply done this or that. The problem with this approach is that, as the old saying goes, hindsight is twenty-twenty.

Given what the appellee knows regarding his whereabouts during the period in question and various aspects of his life at that time, it is rather easy to provide numerous facts which would have allowed somebody to locate him and make a convincing argument that any reasonably diligent effort would have uncovered these facts and led to appellee. Thus, appellee can point to the fact that his sister worked at the Miracle Mountain Ranch and knew his whereabouts at all times; that he always left a forwarding address at each camp he worked at, that he resided with his mother and father for a six month period during the time in question and that they always knew his current address, that he was listed in telephone books in Lake Winola, Pennsylvania; Auburn, Washington; Edwards, Missouri and Wonder Lake, Illinois; and held driver's licenses from Illinois, Pennsylvania, Washington and Missouri, during the time in question. However, unless viewed from the appellants' perspectives, these facts can mislead as appellants did not have the luxury of knowing these things in advance.

For instance, not knowing that appellee's sister worked at Miracle Mountain Ranch, and having never been told this when someone was finally reached at the telephone number provided them, appellants had no reason to know appellee's sister worked there and, consequently, did not ask her where he currently resided. The fact that appellee left a forwarding address at Miracle Mountain does not help appellants if, when someone is finally reached at the telephone number provided, the person answering the phone responds that appellee used to live there but left some time ago and that they did not know where he currently resided. The fact that appellee held a driver's license in Pennsylvania, Washington and Missouri, besides Illinois is of little use when the accident report reveals he held an Illinois license. Appellants certainly never would have known that appellee resided in the states of Washington and Missouri, and would never had reason to check those states' department of transportation, or its equivalent, and although appellants should have believed that appellee might have obtained a Pennsylvania license, a check with PENNDOT likely would have resulted in them receiving the same address they already had and which they already knew was no longer current since Spring Creek was his first place . of residence in Pennsylvania.[1] The fact that appellee's father knew appellee's address at all times and that the father's phone number was listed on the accident report does appellants little good if the phone number was changed when appellee's parents moved to another address in October of 1991, prior to counsel being retained.[2]

Although appellants apparently did not fully develop all the steps taken to locate appellee in their affidavits or at the argument on the motion for summary judgment,[3] nor were they required to do so at the summary judgment stage of the proceedings, see, McFadden v. American Oil Company, 215 Pa.Super. 44, 257 A.2d 283 (1969), the evidence, viewed in their favor, reveals that after counsel was retained numerous phone calls were made to the number provided on the notice of accident report without any response at all. When the phone was finally answered appellants were told by the individual who answered the call that appellee once resided there but had not for some time and that they did not know his current whereabouts. Several calls were also made to the number listed for appellee's father as well without any response. Appellants attempted to contact an Alliance Church in the vicinity be-

---

1. Appellee does not indicate which address was on his Pennsylvania driver's license.

2. Appellee's affidavit does not indicate whether the number remained the same or was changed when his parents moved.

3. Appellants' counsel provided unsworn testimony which detailed many of the efforts taken to locate appellee, but counsel did not produce the actual office employees who did most of the work and would have greater knowledge of those efforts.

cause the police had informed them that appellee was a youth minister for an Alliance Church. This avenue was fruitless as well. Appellants also consulted the phone listings for the area and were unable to get a current listing for appellee in the vicinity of Spring Creek. From appellants perspective their defendant was a transitory Christian camp minister who travels from youth camp to youth camp for relatively short stints, who was no longer at the address given them and whom the people at the address given them had no knowledge of his current address or location. This is a completely different perspective than the one created by appellee's affidavits and arguments.

■ The above dichotomy merely scratches the surface as to just how different a task can be perceived from opposite viewpoints. In trying to develop a workable approach to this specific problem we must keep in mind the general purpose of the limitations provisions. The limitations of actions period represents a balancing of interests between an allegedly aggrieved party and the alleged wrongdoer. Fairness requires that an individual who believes he has been wronged have a sufficient period of time to recover from his injury, if any, investigate the circumstances surrounding a potential claim and decide whether legal action is warranted. On the other side of the equation, it is recognized that individuals should not be subjected to claims so remote in time that defending against them will be greatly hampered and, further, that people should be free to live their lives without worrying that they will be summoned into court and possibly subjected to civil liability for events occurring some time ago.

■ With regard to an action for personal injury the legislature has concluded that the balancing of the above interests requires a two year period of time. However, there are times when the clock should not continue ticking due to factors beyond the general contemplation of the limitations period. Thus, when one suffers an "injury" which is not immediately apparent, the discovery rule works to toll the limitations period until injury is discovered or should have been discovered through the exercise of reason-

able diligence. If one is injured while a minor the limitations period is tolled until majority is reached. Similarly, the provision in question here tolls the limitations period if the defendant leaves the Commonwealth and remains absent.

The reason for tolling the statute when a defendant leaves the jurisdiction should be obvious. It simply is not fair to allow the clock to run to zero when the defendant has left the Commonwealth and remains difficult, if not impossible, to locate. There is no sound reason to allow the statute of limitations to become a game of hide-and-seek, and, although no one is suggesting appellee deliberately secreted himself to avoid being sued, nevertheless, neither did he send appellants postcards to update them as to his travels even though he had been involved in an automobile accident where he rammed into the back of another vehicle, apparently due to falling asleep, and could have anticipated being sued for the collision.

The most common situation involving initiation of actions has parties with well defined and easily locatable residences. It is in this context that the general rules of limitations were conceived and meant to be applied. Although there will certainly be exceptions to the common scenario, those situations need to be dealt with in a manner fairly balancing the competing interests of the parties. In the situation presented here, from the plaintiff's perspective it means tolling the statute while the defendant is out of state and difficult to locate. From the defendant's perspective it means requiring the plaintiff(s) to make a reasonably diligent effort to locate the defendant and serve him. However, it does not necessarily mean requiring a Herculean search effort, the hiring of Sherlock Holmes or putting the FBI on the defendant's trail. It means requiring a plaintiff to take normal steps that are reasonably calculated to locate a defendant.

■ In consideration of the above interests we believe a fair and workable approach to the limitations question presented here is to look at the efforts made by the plaintiff to locate the defendant from the *plaintiff's perspective*. If it is concluded that the plain-

tiff(s) made a reasonably diligent effort to find the defendant yet the defendant was not located, then the limitations period will be tolled for the period of time which the defendant was out of state and not located. If it is concluded that the plaintiff's efforts fell short of reasonable diligence, the period of absence will still be tolled if it is concluded that it is more likely than not that a reasonably diligent effort would have failed to result in the finding and successful serving of the defendant within a total countable time equal to the limitations period.[4]

■ Turning to the court's granting of summary judgment, we have little difficulty in concluding that the court erred in granting appellee's motion for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact presented for determination. The court is not to resolve conflicting facts or conflicting inferences from non-conflicting facts, rather the court's role is to determine whether a genuine issue of fact is implicated. *French v. United Parcel Service*, 377 Pa.Super. 366, 547 A.2d 411 (1988). The accident occurred on February 2, 1991, and suit was instituted on March 2, 1995, four years and one month later. However, appellee left Pennsylvania on January 10, 1992, and was continuously absent from the Commonwealth until served in March of 1994 with the New York action. Appellants received notice of service in early April of 1994. Consequently, under 42 Pa. C.S.A. § 5532(a), the period from January 10, 1992, to early April of 1994, or a large part of it, could possibly be excluded from the limitations period. That period comprises approxi-mately two years and three months, and, if deducted in full from the four years and one month actual time expiration, would make the suit timely.

In consideration of the time sequences just described and the preceding discussion, there was clearly a factual issue to be determined, that being whether or not appellants exercised reasonable diligence in attempting to locate appellee, and possibly, whether or not a reasonably diligent effort would likely have resulted in the locating and serving of appellee and, if so, when. We conclude, as did the court in *Bywaters*, that the question of whether or not reasonable diligence was exercised is a question of fact for the jury to decide. Granting summary judgment in this context requires a conclusion that all facts relevant to this inquiry were already known and that a jury could not possibly conclude that reasonable diligence was exercised. Both of these conclusions are in error. The facts relevant to this inquiry were clearly not fully developed and appellants have a right to have these matters fleshed out in the context of a trial.[5] Further, in our opinion, it is clear from the pleadings, affidavits and testimony of appellants' counsel, that it cannot be said as a matter of law that, considering the facts known to appellants, appellants failed to exercise reasonable diligence and had they done so appellee would have been located in a considerably shorter period of time than he in fact was. The court's opinion makes clear that it went beyond a mere assessment of whether or not a genuine issue of material was presented, rather the court conducted a

---

4. Stated alternatively, if it is found that the plaintiff's efforts fell short of reasonable diligence, then the inquiry shifts to whether it is more likely than not that a reasonably diligent effort would have found the defendant soon enough to make the claim time barred. In the present case appellants require the tolling of approximately 25 months time to be brought within the limitations period. Should a jury find that appellants did not exercise reasonable diligence and also that a reasonably diligent effort would have found appellee sooner than twenty five months after leaving the Commonwealth, the jury or court can conclude that appellants' action is time barred.

5. For instance, in supporting its granting of summary judgment the court cites appellants' failure to call appellee's father while asserting that the address and telephone number were correctly listed and remained firm. However, as pointed out earlier appellee's affidavit states his parents moved in October of 1991 and does not state that the telephone number remained the same. Further the trial court cites appellants' failure to check for a Pennsylvania driver's license yet it is not established that appellee's driver's license provided any information that they did not already possess. Additionally, appellee's affidavit broadly states that his mail was always forwarded to him by either his sister or the post office. Yet it does not assert that he in fact received letters addressed to him in Spring Creek, while he was living at home or Warsaw, Missouri, the times approximately two years after the date of the accident.

review as if it had been a fact finder.[6] This is clearly improper. Consequently, it was error to grant summary judgment.

Order granting summary judgment vacated. Remanded for a continuation of proceedings, jurisdiction relinquished.

SCHILLER, J., concurs in the result.

FORD ELLIOTT, J., files a concurring Statement.

FORD ELLIOTT, Judge, concurring.

I join in the holding and rationale as set forth by the the majority. I write separately only to note that, while the majority does not set forth the respective burdens of proof applicable under its analysis, I assume the majority is adopting the "shifting burden" approach articulated by the federal district court in *Bywaters v. Bywaters,* 721 F.Supp. 84 (E.D.Pa.1989), *affirmed,* 902 F.2d 1559 (3d Cir.1990). Under the *Bywaters* analysis, a plaintiff must establish, by a preponderance of the evidence, that the defendant is no longer a resident of Pennsylvania for purposes of § 5532(a). Once plaintiff meets its burden, the burden shifts to defendant, who usually bears the burden of proving an affirmative defense. The defendant must show it falls within the exception to the general tolling rule found in § 5532(a). Defendant does so by proving by a preponderance of the evidence that, through the exercise of due diligence, plaintiff could have located defendant outside the Commonwealth and served defendant there by certified mail, as permitted by § 5532(b)(3). *Id.* at 88.

---

**6.** The court supports its conclusion almost entirely by examining the things appellants' counsel did not do without discussing the steps he actually took and how the responses to those steps might have affected his thinking on the matter.